## MATTER OF HO

### In Visa Petition Proceedings

### A-24247019

*Decided by Board March 17, 1988*

(1) The petitioner bears the burden in visa petition revocation proceedings of establishing that the beneficiary qualifies for the benefit sought under the immigration laws. *Matter of Cheung,* 12 I&N Dec. 715 (BIA 1968), reaffirmed.

(2) Approval of a visa petition vests no rights in the beneficiary of the petition but is only a preliminary step in the visa or adjustment of status application process, and the beneficiary is not, by mere approval of the petition, entitled to an immigrant visa or to adjustment of status.

(3) The realization by the district director that he made an error in judgment in initially approving a visa petition may, in and of itself, be good and sufficient cause for revoking the approval, provided the district director's revised opinion is supported by the record.

(4) Doubt cast on any aspect of the petitioner's proof may lead to a reevaluation of the reliability and sufficiency of the remaining evidence offered in support of the visa petition.

(5) Evidence serving as the basis of a notice of intention to revoke approval of a visa petition need not have been previously unavailable or undiscoverable.

(6) It is incumbent upon the petitioner to resolve any inconsistencies in the record by independent objective evidence, and attempts to explain or reconcile such inconsistencies, absent competent objective evidence pointing to where the truth, in fact, lies, will not suffice.

ON BEHALF OF PETITIONER:
Sam Bernsen, Esquire
Fragomen, Del Rey & Bernsen, P.C.
1140 Connecticut Avenue, N.W.
Suite 1000
Washington, D.C. 20036

ON BEHALF OF SERVICE:
David M. Dixon
Appellate Counsel

Glyndell E. Williams
General Attorney

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

In a decision dated May 23, 1985, the district director revoked his prior approval of the visa petition which the petitioner had filed to accord the beneficiary preference status as his unmarried son pur-

suant to section 203(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1153(a)(1) (1982). The petitioner appealed from that decision and oral argument in the case was heard by the Board on June 4, 1986. The appeal will be dismissed.

The petitioner, a 55-year-old native of the People's Republic of China ("PRC") and citizen of the United States, immigrated to this country with his wife and five biological children on September 19, 1968. The petitioner claims that he and his wife adopted the beneficiary in the PRC in 1966 when the beneficiary was 7 years old.

In order to qualify as a "son" for the purpose of obtaining preference status under the immigration laws, the beneficiary must once have qualified as a "child" of the petitioner as that term is defined by section 101(b)(1) of the Act, 8 U.S.C. § 1101(b)(1) (1982); *Matter of Coker*, 14 I&N Dec. 521 (BIA 1974). Section 101(b)(1)(E) of the Act includes within the definition of the term "child" an adopted child, provided the child was legally adopted while under the age of 16 years and the child resided with and was in the legal custody of the adopting parent or parents for the requisite 2-year period.[1]

The petitioner filed his visa petition on the beneficiary's behalf on May 9, 1979. On February 4, 1982, the district director issued a notice of intention to deny the visa petition on the ground that the evidence submitted failed to establish that the beneficiary qualified as the petitioner's adopted child. On August 17, 1982, following the submission of additional evidence by the petitioner, the visa petition was approved and was forwarded to the American consulate general in Guangzhou, PRC. The consulate general returned the visa petition to the district director for possible revocation on December 6, 1983, setting forth reasons for its belief that the claimed adoption may not have taken place and, further, that the 2-year residence and legal custody requirements of section 101(b)(1)(E) had not been satisfied.

In a letter dated January 24, 1985, the district director notified the petitioner of his intention to revoke his approval of the visa petition based upon the recommendation of the American consulate general at Guangzhou, and he granted the petitioner 15 days within which to offer evidence in opposition to the grounds for revocation cited in the consulate general's report. The petitioner was

---

[1] Under the law in effect at the time the petitioner filed his visa petition, periods of residence both prior and subsequent to the adoption could be considered in determining whether the residence requirement of section 101(b)(1)(E) had been met, but the child had to be in the legal custody of the adopting parent for 2 years following the adoption. The requirement that the legal custody provision could only be satisfied subsequent to the adoption was eliminated by section 2 of the Immigration and Nationality Act Amendments of 1986, Pub. L. No. 99-653, 100 Stat. 3655.

provided with a copy of the report, both prior and subsequent to the notice of intention to revoke, and he responded through letters of counsel dated October 22, 1984, and March 4, 1985. On May 23, 1985, notwithstanding the petitioner's rebuttal, the district director determined that the petitioner had failed to demonstrate compliance with the residence and legal custody requirements of the statute, and he accordingly revoked his approval of the visa petition.

The consulate general's report, upon which these revocation proceedings are based, expressed doubt both as to whether an adoptive relationship was in fact created and whether the 2-year residence and legal custody requirements of section 101(b)(1)(E) had been satisfied. Since the district director's decision to revoke his approval of the visa petition was grounded solely on the petitioner's failure to establish compliance with the residence and legal custody requirements of the Act, we shall focus on those aspects of the record that relate to the stated ground for revocation.

Offered in support of the visa petition when it was first before the district director were several letters to the petitioner and his wife from the beneficiary, money order receipts, affidavits, and Chinese documents. Those documents included an adoption agreement, purportedly signed by the petitioner and his wife and the beneficiary's natural mother, which recites that the agreement was made on April 2, 1967.

In an affidavit dated July 7, 1981, the petitioner's wife stated that she and the petitioner adopted the beneficiary in June 1966, some 10 months prior to the date the adoption agreement was executed, following the death of the beneficiary's natural father. The petitioner's wife explained that she had not realized she would need documentation for the adoption until the family began arrangements to immigrate to the United States. She stated that her husband, the petitioner, lived in Hong Kong[2] and was fearful of returning to their village in the PRC, having once been detained by the Communist regime as the son of a landlord. She asserted that she accordingly "had the responsibility of living in the village together with my adopted son to look after our farmlands being tilled by our workers." She claimed that her residence was in the village except for periodic visits to Hong Kong to be with her husband. She explained that her natural born children, all of whom were born in Hong Kong,[3] lived with her husband in Hong Kong but that she and the children could freely enter and leave the PRC

---

[2] The record reflects that the petitioner left the PRC for Hong Kong in 1946.

[3] A sixth child was born to the petitioner and his wife in the United States in 1975.

with her Hong Kong identity card. She added that the beneficiary had been unable to obtain an exit permit from the PRC Government and consequently could not join the other children in Hong Kong. The petitioner's wife explained that, because of the expense involved, and in order to avoid complicating the family's immigration to the United States, the petitioner's sister, who had petitioned to accord the petitioner his preference status, instructed the petitioner's wife not to claim her mother, sister, or the beneficiary. The petitioner's wife stated that the petitioner's sister had initially intended to bring only the petitioner to the United States but reconsidered when relatives urged that she not break up the family.

In an affidavit executed on June 29, 1981, one of the petitioner's biological sons, Jack, stated that arrangements for the beneficiary's adoption were made by his mother since his father was in Hong Kong and seldom returned to the village. He stated that "every summer vacation my mother brought me and my sister Susan back to our native village of Cheung On Lee from Hong Kong where we were attending school" and that "on the occasions we returned to the village my mother would bring candy and cookies for my brother which he loved." He stated that the beneficiary was cared for by his maternal grandmother whenever his mother was in Hong Kong. He added that it was his understanding that his parents could not obtain an exit permit from PRC authorities to enable the beneficiary to accompany the family to the United States.

In a sworn statement dated June 27, 1981, the petitioner's daughter Susan declared that her parents had adopted the beneficiary when he was about 6 years old and that "[d]uring June/July of 1966, he lived in our household and as children he played with me and my brother (Jack)." She continued, "My mother left China together with me and brothers and sisters." She explained that the family was not able to bring the beneficiary with them when they immigrated to the United States in September 1968 because "my father's sister who petitioned for us felt it would be too complicated to bring my adopted brother to the United States."

In the notice of intention to deny the visa petition dated February 4, 1982, the district director observed, inter alia, that the affidavits submitted in support of the visa petition were rather vague with respect to the length of time the beneficiary resided with the petitioner's spouse.[4] The district director pointed out that it would not have been possible for the petitioner's wife to have resided with

---

[4] The legal custody and residence requirements of the statute may be satisfied when custody and residence for the requisite 2-year period have been with only one of the adopting parents. *Matter of Y-K-W-*, 9 I&N Dec. 176 (A.G. 1961).

the beneficiary for the requisite 2-year period inasmuch as the adoption took place, according to the adoption agreement, on April 2, 1967, and the petitioner immigrated to the United States with his wife and biological children on September 19, 1968. The district director took note of the petitioner's wife's contention that the adoption in fact took place 10 months prior to the date the adoption agreement was executed but observed that her assertion had not been substantiated. He noted that a review of the petitioner's immigration file disclosed that, on various declarations and applications executed after the beneficiary's claimed adoption, the petitioner made no mention whatever of the beneficiary but listed only his biological children, specifically stating on one occasion, "I do not have any other children besides those listed above." The district director concluded that the petitioner had failed to sustain his burden of establishing the claimed relationship between himself and the beneficiary.

In response to the notice of intention to deny, the petitioner submitted, inter alia, affidavits executed by his wife's first cousin and by himself. The petitioner's wife's cousin stated in his affidavit, dated February 22, 1982, that he had had dinner with the petitioner and the petitioner's wife at his home in Hong Kong on April 28, 1966, and was told that the petitioner's wife "had just returned for [sic] her village where she had adopted a son, [the beneficiary]." He claims that he clearly recalls the date of the dinner because 3 days later, on May 1, 1966, he finalized a partnership agreement for his first business venture.

In his own affidavit dated March 3, 1982, the petitioner corroborated the information provided in the affidavits of his wife and children, although he reported February 15, 1966, as the date of adoption, a different date than that given by his wife and suggested by her cousin. The petitioner stated that "my wife maintained our household in the village and managed our farmlands which were being rented out to the villagers" but that "she visited me from time to time in Hong Kong." With regard to the discrepancy between the date of the adoption agreement and the alleged date of adoption, the petitioner explained that there was no indication that the family would be able to immigrate to the United States at the time of the adoption and there was consequently no thought at that time that a contract of adoption would be needed. With respect to his past failure to acknowledge the beneficiary as his son, the petitioner explained that he had not listed the beneficiary among his children at his sister's insistence when his sister petitioned for him and that he felt compelled on subsequent applications to give consistent information.

As noted earlier, the visa petition was eventually approved on August 17, 1982, and sent to the American consulate general at Guangzhou. The consulate general determined, upon investigation, that the evidence did not support the petitioner's contention that the beneficiary lived with the petitioner's wife in her native village in the PRC from the time of the alleged adoption until the family immigrated to the United States. Rather, the consulate general concluded, the preponderance of evidence suggests that the petitioner's wife lived with her husband in Hong Kong and occasionally returned on visits to the village.

The consulate general reported that, as a result of discrepancies in the beneficiary's statements and the documents he presented in his initial visa interview at the consulate general in January 1983, the consular officer requested further documentation and a review of the immigration file of the petitioner's wife. Examination of that file revealed that the petitioner's wife had consistently claimed Hong Kong, not the PRC, as her place of residence from 1952 until her departure for the United States.[5] The report continued:

In her immigrant visa application which she signed on January 26, 1968, one and one-half years after an adoption agreement was allegedly signed, Mrs. Tam [the petitioner's wife] listed the following places of residence of six months or more: 1933–1952 Kwangtung (Guangdong) China; 1952–1957 Peak Road, Hong Kong; July 1957–November 1964 Kowloon, Hong Kong; November 1964 to now (1/26/68) Kowloon, Hong Kong. [6] She further stated that her children were living with her in Hong Kong. In her Statutory Declaration made before the Court of Justice in Hong Kong on February 3, 1968, Mrs. Tam swore that she "last left Mainland China on the first of November 1952" and that she was at the time the declaration was made living with her husband and children in Hong Kong. Likewise, her husband stated in both his immigrant visa application dated January 26, 1968, and his Statutory Declaration of February 3, 1968, that his wife was living with him in Hong Kong. In the I-130 petition filed for her brother on December 16, 1966, ten months after the beneficiary was allegedly adopted but two months before an adoption agreement was signed, Mr. Tam's sister also gave a Kowloon, Hong Kong address for her brother's spouse and children.

The consulate general found incredible the claim of the petitioner and his wife that, following the adoption of the beneficiary, the petitioner's wife remained in the PRC to manage the family's farmlands. The report pointed out that "[d]uring the fifties and certainly by the early sixties, all land in [the PRC] was declared to be state property and was divided into communes. Private citizens did

---

[5] Review of the petitioner's wife's file also disclosed that she, like the petitioner, never claimed the beneficiary as her son.

[6] The immigrant visa application of the petitioner's wife in fact listed specific street addresses at which she claims to have lived in Hong Kong for the periods indicated, addresses that correspond with addresses given by the petitioner for the same periods on his immigrant visa application.

not retain private family lands and certainly did not collect rents from villagers."

Noting that it is common for Chinese males to live and work in Hong Kong while their families remain in the PRC, the consulate general considered it "highly unusual" for a man and his five young children to live in Hong Kong alone while only the wife stayed behind in the village. The consulate general found it "extremely difficult to believe" that the petitioner's wife would give birth to five children in Hong Kong between 1954 and 1962, then send them to school in Hong Kong, while she herself remained in the PRC to care for an adopted child.

The consulate general took note of additional discrepancies in the evidence. For example, the petitioner's son Jack swore in his affidavit that his maternal grandmother had cared for the beneficiary whenever his mother was in Hong Kong. However, his mother, the petitioner's wife, stated in her 1968 Hong Kong Statutory Declaration and immigrant visa application that her mother had died in Canton City, China, on January 18, 1957. The beneficiary told the consular officer that his uncles had looked after him when his adoptive mother was away.

On January 24, 1985, the district director issued a notice of intention to revoke based upon the consulate general's report. Subsequently, on May 23, 1985, he revoked his prior approval of the visa petition. We concur with the actions taken by the district director.

Under section 205 of the Act, 8 U.S.C. § 1155 (1982), the Attorney General may revoke the approval of a visa petition previously approved by him for what he deems to be "good and sufficient cause." In response to the notice of intention to revoke and on appeal, the petitioner argues (1) that the district director did not have good and sufficient cause to institute revocation proceedings in this case, (2) that the Government has the burden of proof in these proceedings and did not meet its burden, and (3) that the 2-year residence and legal custody requirements of section 101(b)(1)(E) of the Act were satisfied. We find the petitioner's arguments unpersuasive.

We turn first to the question of who bears the burden of proof in this case. In *Matter of Cheung*, 12 I&N Dec. 715 (BIA 1968), this Board specified that the burden remains with the petitioner in revocation proceedings to establish that the beneficiary qualifies for the benefit sought under the immigration laws, a principle which we reaffirmed in our recent decision in *Matter of Estime*, 19 I&N Dec. 450 (BIA 1987).

The petitioner argues that the beneficiary of an approved visa petition has "a valuable privilege in the nature of a license" and that the burden of proof is upon the district director, as initiator of

the revocation proceedings, to establish that the beneficiary should be deprived of that privilege. The petitioner seeks to distinguish *Matter of Cheung, supra,* arguing that the approval of the visa petition in *Cheung* was subject to conditions, whereas the approval in the present case was unconditional.

Contrary to the petitioner's contention, the approval of a visa petition vests no rights in the beneficiary of the petition. Approval of a visa petition is but a preliminary step in the visa or adjustment of status application process, and the beneficiary is not, by mere approval of the petition, entitled to an immigrant visa or to adjustment of status. *See generally Tongatapu Woodcraft Hawaii, Ltd. v. Feldman,* 736 F.2d 1305 (9th Cir. 1984); *Amarante v. Rosenberg,* 326 F.2d 58 (9th Cir. 1964); *see also Joseph v. Landon,* 679 F.2d 113 (7th Cir. 1982); *Matter of Cheung, supra.* Rather, such approval may be revoked at any time for good cause shown. Section 205 of the Act. As there is no right or entitlement to be lost, the burden of proof in visa petition revocation proceedings properly rests with the petitioner, just as it does in visa petition proceedings. *Tongatapu Woodcraft Hawaii, Ltd. v. Feldman, supra; Matter of Cheung, supra.*

The petitioner's attempt to distinguish *Matter of Cheung, supra,* raises, in our view, a distinction without a difference. The conditionality of the approval of the petition in *Cheung* was not material to the Board's holding in the case. *Id.* at 719.

The Board's position with respect to the allocation of the burden of proof in revocation proceedings is wholly consistent with that of the Ninth Circuit Court of Appeals, the jurisdiction in which this case arises. In *Tongatapu Woodcraft Hawaii, Ltd. v. Feldman, supra,* the Ninth Circuit stated that, notwithstanding the burden section 205 places on the Government to show good and sufficient cause for the proposed revocation, "a proceeding to revoke a visa petition, like the petition itself, is a part of the application process and falls under § 291 of the Act, 8 U.S.C. § 1361." *Id.* at 1308.[7] Accordingly, "once the INS has produced some evidence to show cause for revoking the petition, the alien still bears the ultimate burden of proving eligibility. The alien's burden is not discharged until the visa is issued." *Id.* The court then directed its attention to the

[7] Section 291 of the Act, 8 U.S.C. § 1361 (1982), provides in part:

Whenever any person makes application for a visa or any other document required for entry, or makes application for admission, or otherwise attempts to enter the United States, the burden of proof shall be upon such person to establish that he is eligible to receive such visa or such document, or is not subject to exclusion under any provision of this Act, and, if an alien, that he is entitled to the nonimmigrant, immigrant, special immigrant, immediate relative, or refugee status claimed, as the case may be.

standard of review which applies in visa petition revocation proceedings and determined that a decision to revoke approval of a visa petition, like a decision to deny a visa petition, will be sustained on judicial review if supported by substantial evidence. *Id.* at 1309; *see also Kee Yiu Leong* v. *O'Shea,* 363 F.2d 426 (9th Cir. 1966).

In *Matter of Estime, supra,* this Board stated that a notice of intention to revoke a visa petition is properly issued for "good and sufficient cause" where the evidence of record at the time the notice is issued, if unexplained and unrebutted, would warrant a denial of the visa petition based upon the petitioner's failure to meet his burden of proof. The decision to revoke will be sustained where the evidence of record at the time the decision is rendered, including any evidence or explanation submitted by the petitioner in rebuttal to the notice of intention to revoke, would warrant such denial. *Id.*

The petitioner maintains that the district director did not have "good and sufficient cause" to institute these revocation proceedings. He argues that "good and sufficient cause" requires a showing of new evidence, fraud, or error of law, none of which, he contends, was demonstrated here. The petitioner maintains that all of the evidence supporting the decision to revoke was in the district director's possession when he approved the visa petition and that the decision to revoke was based solely upon the consulate general's disagreement with that approval. The district director, the petitioner submits, simply changed his mind. The petitioner insists that "good and sufficient cause" contemplates more than a relitigation of the same factual issues.

At the outset, we reject the petitioner's contention that mere error in judgment on the part of the district director in initially approving the visa petition cannot, in and of itself, be a proper basis for revoking the approval. The petitioner cites no authority for that proposition and we are unaware of any such authority. We believe that the realization by the district director that he erred in approving the petition, however arrived at, may be good and sufficient cause for revoking his approval, provided the district director's revised opinion is supported by the record.[8]

---

[8] It appears to us that the district director did err in approving the instant visa petition. One of the grounds for denial referenced in the notice of intention to deny was the petitioner's failure to demonstrate compliance with the residence and legal custody requirements of the statute. The only evidence offered in rebuttal to that stated ground for proposed denial were the affidavits of the petitioner and his wife's cousin. The petitioner's affidavit was not specific with respect to the period or peri-
*Continued*

In this regard, we note that evidence considered by the district director may take on new significance when viewed from a different perspective. For example, the district director apparently accepted at face value the petitioner's explanation that his wife had remained in the PRC to manage the family farmlands. However, the consulate general, with its particular expertise regarding prevailing economic and social conditions in the PRC, found that account to be incredible. Doubt cast on any aspect of the petitioner's proof may, of course, lead to a reevaluation of the reliability and sufficiency of the remaining evidence offered in support of the visa petition.

In any event, these revocation proceedings are based upon the report of the consulate general at Guangzhou, which the district director incorporated by reference in the notice of intention to revoke. The consulate general's investigation did in fact uncover new evidence sufficient to support the issuance of the notice of intention to revoke, most significantly, documents in the petitioner's wife's immigration file reflecting her residence in Hong Kong during the time she claimed to be living in the PRC. There is no indication that the district director reviewed those documents prior to approving the visa petition. There is, moreover, no requirement that evidence serving as the basis of a notice of intention to revoke must have been previously unavailable or undiscoverable.

The petitioner's remaining argument, that the evidence of record establishes compliance with the 2-year residence and legal custody requirements of the Act, must likewise be rejected. That evidence consists solely of the unsubstantiated statements of the petitioner and his wife,[9] statements that have been shown to be unreliable, having been contradicted by the affiants' own prior declarations. Additional questions regarding the veracity of those assertions are raised by the consulate general's report. The petitioner and his family are responsible for the ambiguities in the record, and it is incumbent upon the petitioner to resolve the inconsistencies by independent objective evidence. Attempts to explain or reconcile the

---

ods of time his wife actually resided with the beneficiary. The affidavit of his wife's cousin, even if fully credited, merely tended to establish that it was possible for the petitioner's wife to have resided with the beneficiary for 2 years following the adoption, as claimed; the affidavit was not evidence that she had in fact resided with the beneficiary for any given period. The evidence offered in response to the notice of intention to deny did not, in our opinion, resolve the legitimate questions raised in the notice.

[9] The affidavits of the petitioner's son and daughter, and of his wife's cousin, cited by the petitioner as further evidence that the residence and legal custody requirements have been met, do not support the petitioner's claim.

conflicting accounts, absent competent objective evidence pointing to where the truth, in fact, lies, will not suffice. No such evidence has been presented.

Questions of credibility aside, the affidavits of the petitioner and his wife are deficient on their face inasmuch as they fail to allege facts establishing that the petitioner's wife resided with the beneficiary for an aggregate of time totaling 2 years. *See generally Matter of Lee,* 11 I&N Dec. 911 (BIA 1966). *See also Matter of Repuyan,* 19 I&N Dec. 119 (BIA 1984) (residence requirement of section 101(b)(1)(E) of the Act is not met by a succession of visits by an adopting parent in the home of the adopted child).

We find that the notice of intention to revoke provided a sufficient foundation for initiating revocation proceedings and that the basis for revocation alleged has not been overcome by the petitioner. The appeal will accordingly be dismissed.[10]

**ORDER:** The appeal is dismissed.

---

[10] The Service alleges for the first time on appeal that some of the evidence submitted in support of the visa petition, specifically, two letters from the beneficiary dated October 17, 1968, and December 21, 1969, may have been fabricated. Given our holding in the case, we need not and we do not consider that charge.