Jose Luis ESTRADA–HERNANDEZ, and Jose Luis Farias–Estrada, Plaintiffs,

v.

Eric H. HOLDER, Jr., Attorney General of the United States, et al., Defendants.

Case No. 13CV2791 JLS (RBB).

United States District Court, S.D. California.

Signed May 15, 2015.

Filed May 27, 2015.

Robert George Nadalin, The Law Offices of Robert Nadalin, San Diego, CA, for Plaintiffs.

Aaron S. Goldsmith, Department of Justice, Washington, DC, Samuel William Bettwy, U.S. Attorney's Office Southern District of California, San Diego, CA, for Defendants.

## AMENDED ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

JANIS L. SAMMARTINO, District Judge.

Presently before the Court is Plaintiffs Jose Luis Estrada–Hernandez ("Estrada") and Jose Luis Farias–Hernandez' (the "Beneficiary") (collectively, "Plaintiffs") Motion for Summary Judgment ("MSJ"). (Plaintiffs' MSJ, ECF No. 23.) Also before the Court is Defendant's Combined Cross–MSJ and Opposition to Plaintiffs' MSJ, (Def. Cross MSJ, ECF No. 24), as well as the parties' associated replies. (Plaintiffs' Reply, ECF No. 25; Def. Reply, ECF No. 26.)

The Court vacated the hearing set for February 19, 2015 and took the matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). Having considered the parties' arguments and the law, the Court **DENIES** Plaintiffs' MSJ and **GRANTS** Defendant's Cross–MSJ.

## BACKGROUND

Estrada is the sole proprietor of Estrada's Mexican Food ("Estrada's"), a restaurant in Santee, California. (Administrative Record ("AR") 2, 9, ECF No. 13.) Estrada petitioned the United States Citizenship and Immigration Service ("USCIS") for permission to permanently employ the Beneficiary as a Michoacán specialty cook, but the application was denied. (*Id.* at 2.)

### 1. Legal Framework

Under the Immigration and Nationality Act, the government may grant visas to qualified immigrant aliens who are offered permanent employment for which qualified workers are not available in the United States. 8 U.S.C. § 1153(b)(3)(A). Authority to administer this statute has been delegated to the Secretary of Homeland Security and sub-delegated to the USCIS. *See id.* § 1103(a)(1); 8 C.F.R. § 2.1; Pub. Law No. 107–296, §§ 451(b)(1), 471 (Nov. 25, 2002) (abolishing the Immigration and Naturalization Service and transferring

the adjudication of immigrant visa petitions to USCIS).

To begin the process, an alien's prospective employer must file ETA Form 9089, "Application for Permanent Employment Certification," with the Department of Labor ("DOL"). 20 C.F.R. § 656.17(a)(1). When filing the Application, the employer must state the actual minimum requirements of the job, including the wage offered and the experience required. (*See* AR 36–37, ECF No. 13.) Prior to approval, the DOL must certify (1) there are no qualified, able, and willing United States workers available to take the position at the time of application and (2) the employment of the alien will not adversely affect the wages or working conditions of similarly situated workers in the United States. 8 U.S.C. § 1182(a)(5)(A)(i). Once the DOL approves the Application, the employer can petition the USCIS to classify a specific alien beneficiary as an employment-based immigrant using Form I–140. *See* 8 C.F.R. § 204.5(a), (c). The USCIS uses the DOL approval date, known as the "priority date," in evaluating the petition. *Id.* § 204.5(d).

The employer bears the burden of showing that the job offer to the beneficiary is a realistic one. Thus, the employer must show that it has the ability to pay the proffered wage and that the prospective employee has the requisite experience. *Id.* §§ 204.5(g)(2), (*l*)(3)(ii)(A).

*Section 204.5(g)(2) provides:*

Any petition filed by or for an employment-based immigrant which requires an offer of employment must be accompanied by evidence that the prospective United States employer has the ability to pay the proffered wage. The petitioner must demonstrate this ability at the time the priority date is established

and continuing until the beneficiary obtains lawful permanent residence. Evidence of this ability shall be either in the form of copies of annual reports, federal tax returns, or audited financial statements.... In appropriate cases, additional evidence, such as profit/loss statements, bank account records, or personnel records, may be submitted by the petitioner or requested by the Service.

*Section 204.5(l)(3)(ii)(A) provides:*

Any requirements of training or experience for skilled workers, professionals, or other workers must be supported by letters from trainers or employers giving the name, address, and title of the trainer or employer, and a description of the training received or the experience of the alien.

## 2. Factual and Procedural History

Estrada submitted ETA Form 9089 to the DOL on behalf of the Beneficiary. (AR 35–44, ECF No. 13.) The Application stated that Estrada's was unable to find an able, willing, and qualified worker within the United States to fill the Michoacán line cook position. (*Id.* at 43.) The position offered an annual wage of $20,969 and required six months experience as a Michoacán specialty cook. (*Id.* at 36–37.) The DOL certified the labor certification on September 15, 2010, which serves as the priority date for the subsequent petition to USCIS.[1] (AR 212, ECF No. 14.) Estrada then petitioned the USCIS for classification of the Beneficiary as an "other worker" pursuant to 8 U.S.C. § 1153(b)(3)(A). (AR 2, ECF No. 13.)

To establish the ability to pay the proffered wage of $20,969, Estrada submitted copies of IRS Form W–2, Wage and Tax

---

1. Estrada and the Beneficiary are cousins. However, the DOL certified that Estrada "completed required pre-filing steps, including recruitment steps in good faith and in accordance with applicable law." (AR 3, 52–58, ECF No. 13.)

Statements, for 2010 through 2012. (*Id.* at 8.) These IRS forms reflect payments made by Estrada to the Beneficiary of $19,760, $19,380, and $23,296, respectively. (*Id.*) However, the social security number listed on the Form W–2s does not belong to the Beneficiary. (*Id.* at 8, 67; AR 259, ECF No. 14.) Estrada also provided his income tax returns as sole proprietor of Estrada's for 2010, 2011, 2012. (AR 9, ECF No. 13.) These forms list his adjusted gross income for the three years as $23,409, $34,664, and $36,259, respectively. (*Id.*; AR 436, 452, ECF No. 15; AR 233, ECF No. 14.) Estrada supports a family of six and did not provide a complete list of monthly expenses for the time period. (AR 9, ECF No. 13.) However, Estrada did submit copies of household bills for December 2012, January 2013, and February 2013, reflecting annualized household expenses of approximately $52,000. (*Id.*) Estrada also submitted records of a property evaluation for home in Santee California, checking account information, and quarterly wage reports. (*Id.* at 10–11.)

In the application, Estrada states that the Beneficiary is qualified for the offered position because he worked as a Michoacán specialty cook at Valentine's Taco Shop in San Diego, California from March 5, 1990 to June 4, 2004 and also as a Michoacán specialty cook for Estrada in Santee from June 7, 2004 until September 15, 2010. (*Id.* at 3.) To demonstrate that the Beneficiary possessed the minimum experience, Estrada submitted three documents. (*Id.* at 4–5; AR 258, ECF No. 14; AR 427, ECF No. 15; AR 19, ECF No. 13.) First, Antonio Hernandez Hernandez provided one letter, dated June 12, 2007, stating that he was the Beneficiary's supervisor at Valentine's Taco Shop from March 1990 until June 2004. (*Id.* at 4.) The second document is an affidavit from Valentin Estrada dated September 3, 2013, in which he states that he was the sole owner of Valentine's Taco Shop and em-

ployed the Beneficiary as a Michoacán specialty cook from March 1990 to June 2004. (*Id.*) Third, Estrada provided his own letter as owner and supervisor of Estrada's, on business letterhead, stating that the Beneficiary has been employed as a full-time Michoacán specialty cook at Estrada's since June 2004. (*Id.* at 5.) All three letters use identical language to that of the labor certification to describe the proffered job duties. (*Id.* at 4–5.)

On April 12, 2013, Director Mark J. Hazuda denied the immigrant visa petition on the grounds that Estrada failed to establish that he could pay the Beneficiary the proffered wage and that the Beneficiary had the requisite experience. (AR 250–53, ECF No. 14.) Plaintiff timely appealed the decision to the Administrative Appeals Office (AAO). (AR 2, ECF No. 13; AR 215, 222–28, ECF No. 14.) The AAO reviewed the appeal *de novo.* (AR 2, ECF No. 13.) In completing its review, the AAO requested and received additional evidence from Estrada. (*Id.* at 12–18.) On October 15, 2013, the AAO dismissed the appeal on the same grounds, finding that Estrada failed to establish that he could pay the Beneficiary the proffered wage and that the Beneficiary had the requisite experience. (*Id.* at 2–11.)

On November 25, 2013, Plaintiffs filed a Complaint in this Court for declaratory and injunctive relief, pursuant to the Administrative Procedure Act ("APA"). (Complaint 1, ECF No. 1.) Subsequently, the Parties filed cross-motions for summary judgment. (Plaintiffs' MSJ, ECF No. 23; Def. Cross MSJ, ECF No. 24.)

## STANDARD OF REVIEW

 In actions brought under the APA, summary judgment serves as an avenue for deciding whether a final agency determination is adequately supported by the administrative record when there is no

genuine issue of material fact. *Nw. Motorcycle Ass'n v. U.S. Dep't Agric.*, 18 F.3d 1468, 1471–72 (9th Cir.1994). Under the APA, a Court should hold agency actions to be unlawful only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Agency action is arbitrary and capricious if:

> The agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*City of Sausalito v. O'Neill,* 386 F.3d 1186, 1206 (9th Cir.2004) (quoting *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). The standard is "highly deferential, presuming agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." *Nw. Ecosystem Alliance v. U.S. Fish and Wildlife Serv.,* 475 F.3d 1136, 1140 (9th Cir.2007) (quoting *Indep. Acceptance Co. v. California,* 204 F.3d 1247, 1251 (9th Cir.2000)). A court must be "searching and careful" in its review of an agency action, but is not to substitute its judgment for that of the agency. *Friends of Clearwater v. Dombeck,* 222 F.3d 552, 556 (9th Cir.2000) (citing *Mt. Graham Red Squirrel v. Espy,* 986 F.2d 1568, 1571 (9th Cir.1993)).

 The court's review is based on the administrative record that was before the agency decision makers at the time they made their decision. *Repaka v. Beers,* 993 F.Supp.2d 1214, 1218 (S.D.Cal. 2014) (citing *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)). The agency must examine the relevant data and articulate a satisfactory explanation for its action. *Motor Vehicle,* 463 U.S. at 43, 103 S.Ct. 2856. Plaintiffs bear the burden of showing that agency action was arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with the law. *Kleppe v. Sierra Club,* 427 U.S. 390, 412, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976).

## DISCUSSION

As part of the employment-based visa petition process, Estrada was required to prove(1) he had the ability to pay the proffered salary and (2) the Beneficiary possessed the requisite experience. A review of the record shows that the AAO did not abuse its discretion in dismissing Plaintiffs' appeal because it reasonably determined that Estrada failed to establish both necessary components.

### 1. Ability to Pay

Based on the information provided in the ETA Form 9089, Estrada needed to demonstrate his ability to pay Beneficiary $20,696 per year starting on the priority date of September 15, 2010 and continuing through 2011 and 2012.

 USCIS generally uses three methods for determining whether a petitioner has satisfied is burden of demonstrating that it possesses the ability to pay the proffered wage. USCIS Memorandum, *Determination of Ability to Pay under 8 CFR 204.5(g)(2),* (May 4, 2004). First, petitioner can show that it employs the beneficiary and has paid or is currently paying the proffered wage. (AR 8, ECF No. 13.) Second, petitioner can show that its yearly net income exceeds the proffered wage. (*Id.* at 8–10.) Third, petitioner can show that its net current assets exceed the proffered wage. (*Id.* at 10.) Lastly, administrative case law provides that USCIS may consider a "totality of the circumstances" approach in evaluating the ability

to pay, especially if the employer had one characteristically unprofitable year. (*Id.* at 10–11.)

### A. Actual Payment to the Beneficiary

■ In determining ability to pay, US-CIS first looks to whether the petitioner employed and paid the beneficiary the proffered wage during the period. (*Id.* at 8.) Estrada submitted Form W–2s and Tax Statements for 2010 through 2012, purporting to reflect sufficient payments made to the Beneficiary. (*Id.*) These IRS forms reflected payments made by Estrada of $19,760, $19,380, and $23,296 for each year. (*Id.*) However, the AAO determined that these did not establish the ability to pay, in part because the forms contained a Social Security Number ("SSN") that did not belong to the Beneficiary. (*Id.*) Additionally, the AAO noted that the amounts for 2010 and 2011 were below the proffered wage. (*Id.*)

■ Plaintiffs argue that despite the incorrect SSN, these W–2s should be lawful proof of wages paid. (Plaintiffs' MSJ 11, ECF No. 23.) Plaintiffs state that W–2 Forms are normally accepted as prima facie proof of meeting the ability to pay. (*Id.* at 11.) Plaintiffs argue that USCIS should have taken steps to verify the W–2 Forms or the SSN, and should have notified and allowed petitioner to respond about the authenticity of the forms. (*Id.*) Plaintiffs note, "the mismatch between SSN and name listed on the W–2 form is not an uncommon problem." (*Id.*) Plaintiffs then describe an internal compliance system for documenting and tracking wages paid, which utilizes an Individual Taxpayer Identification Number ("ITIN") and argue that the agency could have used these to confirm the tax records. (*Id.* at 11–12.) Estrada also provided quarterly records, but these records repeat the same incorrect SSN and are illegible.

Defendant argues that the agency had no affirmative duty to verify the W–2 forms or the SSN listed on them. (Def. Cross MSJ 16 n. 6, ECF No. 24.) Rather, the burden remained with Estrada to demonstrate proof of actual payment. *See* 8 C.F.R. § 204.5(g)(2) ("The petitioner must demonstrate this ability"); *Taiyang Foods Inc. v. U.S. Citizenship & Immigration Servs.,* 444 Fed.Appx. 115, 115 (9th Cir. 2011) (affirming summary judgment because petitioner did not meet its burden of proof in demonstrating ability to pay). The Court agrees with Defendant that the agency did not abuse its discretion in determining that the W–2s with an incorrect SSN did not constitute sufficient prima facie documentary evidence showing that Estrada in fact paid the Beneficiary. (Def. Cross MSJ 17, ECF No. 24.)

The next issue is that the Form W–2s and Tax Statements for 2010 and 2011 show that the Beneficiary was paid less than the proffered wages of $20,696. (Def. Cross MSJ 19, ECF No. 24; AR 8, ECF No. 13.) Plaintiffs argue that USCIS should have prorated the proffered wage for the portion of the year that occurred after the priority date in 2010 and the portion of the year that the Beneficiary took unpaid vacation in 2011. (Plaintiffs' MSJ 13–14, ECF No. 23.) However, the 2010 W–2 was for the entirety of 2010. The AAO addressed this in its decision in stating that it would not "consider 12 months of income towards an ability to pay a lesser period of the proffered wage" and elaborated that the "USCIS will prorate the proffered wage if the record contains evidence of adjusted gross income or payment of the beneficiary's wages specifically covering the portion of the year that occurred after the priority date." (AR 10, ECF No. 13.) However Plaintiffs' provided no such evidence. Further, the AAO did not abuse its discretion in finding that Plaintiffs did not show actual sufficient

payments in 2011. Plaintiff argues that the Beneficiary took four weeks of unpaid vacation and that his actual weekly pay rate exceeded the weekly pay rate under the proffered annual wage. (Plaintiffs' MSJ 14, ECF No. 23.) However, the Court and immigration authorities must "examine the certified job offer exactly as it is completed by the prospective employer," and here, Estrada listed an annual salary.

▆▆▆ Next, Plaintiffs argue that other information in the record supports Estrada's ability to pay the wage. Plaintiffs state that the Record contains corroborative evidence of actual payments to the Beneficiary. (*Id.* at 14.) Because the payments were made in cash, Estrada cannot provide checks, however he does provide some pay slips. (AR 260–77, ECF No. 14.) However, these pay slips are from 2012, the only year the W–2 actually meets the requisite amount. Further, the pay slips are handwritten and several of them are not in correct numerical order which raises questions about their authenticity and accuracy.[2] An agency does not abuse its discretion or question the underlying legality of cash payments in refusing to accept pay slips it determines to be unverifiable. *River Street Donuts, LLC v. Napolitano,* 558 F.3d 111, 117 (1st Cir.2009) ("There is no question that the AAO has discretion to decide how to weigh relevant evidence in assessing a prospective employer's ability to pay a proffered wage"). Plaintiffs also find fault in the AAO's decision to not acknowledge an ability to pay based on the amount paid to all employees in 2010 and 2011, which was $28,080 and $27,450, respectively. (Plaintiffs' MSJ 13–14, ECF No. 23.) However, the agency acknowledged this information and reasonably decided not to accept it as proof based upon lack of information about who was paid,

who would be replaced, and what their respective duties were. (*Id.* at 10.)

▆▆▆ Plaintiffs raise several other non-persuasive arguments, including that the AAO used the wrong standard of review in stating that the USCIS may reject a fact stated in the petition if it does not believe that fact to be true. (*Id.* at 15–16.) However, "in adjudicating the application pursuant to the preponderance of the evidence standard, the director must examine each piece of evidence for relevance, probative value, and credibility, both individually and within the context of the totality of the evidence, to determine whether the fact to be proven is probably true." *Matter of Chawathe,* 25 I. & N. Dec. 369, 376 (BIA 2010). The record shows that this is precisely what USCIS and the AAO did. Plaintiffs also argue that the agency erred in not following its own regulations, and therefore the principles of deference do not apply. (Plaintiffs' MSJ 16, ECF No. 23.) The Court disagrees, and finds that the agency did follow its own regulations.

▆▆▆ Plaintiffs also state that this regulatory interpretation would have the practical effect of barring most undocumented persons from ever qualifying. (Plaintiff's Reply 4, ECF No. 15.) But, as Defendant points out, the immigrant beneficiary has no burden of proof, rather it is the employer who must show an ability to pay the proper wages. Further it would be quite possible for an employer to comply by submitting accurate tax documents, showing that net income or net current assets were sufficient, or providing other objective evidence of paid wages. Finally, Plaintiffs argue that 8 C.F.R. § 103.2(b)(16)(i) generally mandates that the AAO provide Defendants with an opportunity to respond to the derogatory

---

2. For example, the date does not correlate with the chronological numerical order in

several instances. (*See* AR 260, 261, 263, 271, ECF No. 14.)

information upon which it based its denial of the petition. (Plaintiff's Reply 6, ECF No. 15.) However, this regulation generally applies to situations in which an I–140 Petition is being revoked, as opposed to initially denied as is the case here. Second, this is not a situation in which authorities relied on derogatory information of which petitioner is unaware, but rather, the agency relied on information provided by Plaintiffs.

### B. *Estrada's Net Income or Net Assets*

Plaintiffs can also establish ability to pay based on the net income figure reflected in the employer's federal income tax return. (AR 8, ECF No. 13.)

 Sole proprietors must show that they can cover their existing business expenses and sustain their dependants while also paying the proffered wage to the beneficiary. *See Ubeda v. Palmer*, 539 F.Supp. 647, 650 (N.D.Ill.1982). Although Estrada's adjusted gross income in 2010, 2011, and 2012 exceeded $20,696 in each year, it remained well-under his submitted household expenses of approximately $52,607 annually.[3] Accordingly, USCIS reasonably determined that Estrada failed to establish the ability to pay the proffered wage. (AR 9, ECF No. 13.) Further, Estrada submitted records including a property evaluation on his home, however, the USCIS reasonably concluded that a home is not a readily liquefiable asset. (*Id.* at 10.)

Accordingly, USCIS did not abuse its discretion in determining that the adjusted gross income reflected in the sole proprietor's tax returns did not establish ability to pay in this case.

### C. *Totality of Circumstances Approach Under Sonegawa*

If an employer cannot establish the ability to pay the proffered wage at all times since the priority date, an employer can still gain approval by establishing a reasonable expectation of future profits sufficient to pay the proffered wage based on a totality of the circumstances. *See In re Matter of Sonegawa*, 12 I. & N. Dec. 612 (BIA 1967). The AAO reasonably found that the reasoning of *Sonegawa* did not apply with respect to the facts presented in this case.

In *Sonegawa*, the Board of Immigration Appeals created a limited exception under a totality of circumstances approach in a situation where employer's petition would normally be denied due to a net income below the proffered wage. *Id.* In *Sonegawa*, the Board reversed an initial denial after a fact-specific analysis of the employer's financial condition revealed that the small profit in 1966 was due to unique conditions that were not likely to be repeated. Specifically, in 1966, Ms. Kaneko moved locations, paid double rent for five months and was meanwhile unable to conduct any business during the move. *Id.* at 614. However, her business rebounded after this period and showed a net profit of $4,774 for the first five months of the following year. *Id.* Based on this and Ms. Kaneko's prominent national reputation, the Board found that Ms. Kaneko's "expectations of continued increase in business and increasing profits are reasonable expectations and that it has been established that she has the ability to pay the beneficiary the stipulated wages." *Id.; Taiyang Foods Inc. v. U.S. Citizenship & Immigration Servs.*, 2010 WL 3732193, at *4

---

**3.** Estrada only provided copies of household bills for three months during the time period in question. The AAO then annualized in order to make assumptions about general household expenses in the absence of more complete records from Estrada. (AR 9, ECF No. 13.)

(W.D.Wash. Sept. 20, 2010) (quoting *Sonegawa*, 12 I & N. Dec. at 614).

Plaintiffs argue that the W–2s, tax returns, and employee wage withholding reports support an "affirmative ability to pay finding under the 'totality of circumstances' approach under *Sonegawa*." (Plaintiffs' MSJ 18, ECF No. 23.) However, "*Sonegawa* is applicable to this case only if the failure . . . to pay the proffered wage was an anomaly amongst profitable years." *Taiyang Foods*, 444 Fed.Appx. at 115. None of the evidence presented by Plaintiffs indicate that Estrada's was a successful business that had experienced and recovered from an isolated period of economic duress similar to the situation for which the Court carved out an exception in *Sonegawa*. As the AAO decision addressed, "There is no evidence in the record of the historical growth of [Estrada's] business, of the occurrence of any uncharacteristic business expenditures or losses from which it has since recovered or of the proprietor's reputation within the industry." (AR 11, ECF No. 12.) Just as in *Taiyang*, "[t]he fact that USCIS declined to make [a *Sonegawa* ] exception . . . does not evidence an abuse of the agency's discretion." *See Taiyang Foods*, 2010 WL 3732193, at *4.

Accordingly, the record demonstrates that the agency considered the primary factors and secondary evidence in making its decision to deny Plaintiffs' application. The decision, which was due to lack of proof evidencing ability to pay, was not "arbitrary, capricious" or without observance of procedure required by law.

## 2. Qualified to Perform Job

■ Independent of the Estrada's ability to pay, Estrada must prove that the Beneficiary possessed six months of experience. Plaintiffs provided three letters, but USCIS determined that none established proof of the requisite experience.

Plaintiffs argue that this was an improper abuse of discretion. (Plaintiffs' MSJ 18–24, ECF No. 23.)

### A. Letter from Antonio Hernandez Hernandez

The first experience letter is from Antonio Hernandez Hernandez and is dated June 12, 2007. Hernandez states that he supervised the Beneficiary at Valentine's Taco Shop. The AAO affirmed USCIS's decision to reject this experience letter on the grounds that the address differed from the address on record for the qualifying employer, did not specify the writer's title, conflicted with information regarding when the Beneficiary entered the United States, used "language identical to the language utilized on the labor certification to describe the proffered job duties," and was not on employer's letterhead. (AR 4, ECF No. 13.)

Plaintiffs argue that the agency improperly rejected the letter because, while a letter must include the name, correct address, and title of the writer per the regulation, there is no requirement that it be on letterhead or specify the signatory's title in a specific way. (Plaintiffs' MSJ 20, ECF No. 23.)

■ The AAO did not abuse its discretion in disregarding this letter. It contained factual inconsistencies that Plaintiffs should have resolved. *See Z–Noorani, Inc. v. Richardson*, 950 F.Supp.2d 1330, 1340–41 (N.D.Ga.2013) (determining that factual inconsistencies in experience letters called into question the veracity of the letter). These inconsistencies reasonably called the letter's accuracy and authenticity into question. (AR 4, ECF No. 13.) Petitioner is responsible for "ambiguities in the record and it is incumbent upon the petitioner to resolve the inconsistencies with independent objective evidence." *Matter of Ho,*

19 I & N Dec. 582, 591–92 (BIA 1988). Plaintiffs attempt to explain some of these inconsistencies, but the record lacks sufficient independent objective evidence to corroborate this. *See Z–Noorani, Inc.,* 950 F.Supp.2d at 1341. Further, this Court's review must be limited to the administrative record that was before the agency at the time of its decision. *Repaka v. Beers,* 993 F.Supp.2d 1214, 1218 (S.D.Cal.2014).

## B. Letter from Plaintiff Estrada Hernandez

The second experience letter is from Estrada himself describing Beneficiary's employment as a Michoacán specialty cook with him since 2004. However, in the initial labor certificate, which sets the parameters of the experience and qualifications necessary for the job, Plaintiffs provided that the alien did not "gain any of the qualifying experience with the employer in a position substantially comparable to the job opportunity requested." (AR 420, ECF No. 15.)

 Plaintiffs argue that the plain language of the application permits consideration of this experience because it is not "substantially comparable" but rather is "same job" experience. (Plaintiffs' MSJ 22, ECF No. 23.) However, a "court must give an agency's interpretation of its own regulations 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *Taco Especial v. Napolitano,* 696 F.Supp.2d 873, 878 (E.D.Mich. 2010) (quoting *Thomas Jefferson University v. Shalala,* 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994)).

The AAO found that Beneficiary's experience with the sponsoring petitioner could not be used to qualify the beneficiary for the certified position because it must base its analysis on the plain language of the labor certification. (AR 5–6, ECF No. 13.) *See Madany v. Smith,* 696 F.2d 1008, 1015

(D.C.Cir.1983) ("the language of the labor certification job requirements ... set[s] the bounds of the alien's burden of prof"); *Rosedale and Linden Park Company v. Smith,* 595 F.Supp. 829, 833 (D.D.C.1984) (explaining that the Court and immigration authorities must "examine the certified job offer exactly as it is completed by the prospective employer"). Because this interpretation was reasonable, the AAO did not abuse its discretion in determining that this letter failed to prove job qualifications specifically outlined on the labor certification. Accordingly USCIS was within its discretion to determine that an identical position is necessarily "substantially comparable." (AR 6–7, ECF No. 13.)

Even if USCIS was to accept Plaintiffs' argument, the letter also suffers from factual inconsistencies similar to those of the first letter. These inconsistencies include that Estrada states that the Beneficiary was employed from June 2004 through September 2010, but in 2005 and 2006 Estrada's tax returns list no wages paid, and in 2007 only $13,395 in wages were paid. (Def. Cross MSJ 127–28, ECF No. 24.) Further, the fact that Estrada is the sponsoring employer and the Beneficiary's cousin, while certainly not dispositive of veracity, is a factor contributing to USCIS's concerns about the letter's authenticity. *See Z–Noorani, Inc.,* 950 F.Supp.2d at 1342 (suggesting that an agency might not reasonably discredit a letter based on familial relationship alone but that it might be considered as a factor in an analysis of its veracity).

## C. Affidavit from Valentin Estrada

In response to the AAO request for documentation in support of work experience, Plaintiffs submitted an affidavit from Valentin Estrada, the owner of Valentine's Taco shop referenced in the earlier letter from Antonio Hernandez Hernandez. (AR

5, ECF No. 13.) The AAO determined that this letter also failed to establish Beneficiary's experience because of questions about its authenticity. Specifically, Valentin Estrada stated that Valentine's Taco Shop closed in 2009. (*Id.*) However, "publicly available information reflects that Valentine's Mexican Food remains open for business on Market Street in San Diego, California and has been located in the Gaslamp/East Village for over 25 years." (*Id.*) The AAO also mentions that the letter is inconsistent with the Beneficiary's date of entry into the United States and the age when he started employment. (*Id.* at 5–6.)

Plaintiffs argue that the discrepancies in the operating dates between that and another business were improperly relied on because the Agency did not give Estrada notice and an opportunity to explain the discrepancies. (*Id.* at 23–24.) However, the AAO was under no obligation to do so, and as discussed above, the burden of proof remained with Estrada. Plaintiffs argue that the USCIS "applied its own prejudices in not recognizing that many young persons work in the businesses of family" in asserting that the letter was not credible because the beneficiary began working full-time at 15 but did not complete highschool until years later in 1994 at age 19. (Plaintiffs' MSJ 24, ECF No. 23; AR 4, ECF No. 13.) However, had USCIS not asserted this particular concern, the letter reflects other sufficient inconsistencies, such as the ambiguities about Valentine's period of operation and the identical language that would reasonably allow the AAO and USCIS to determine that the Plaintiffs did not meet their burden of proof. *See Matter of Ho*, 19 I & N Dec. 582, 591–92 (BIA 1988).

Plaintiffs also argue that the AAO was arbitrary in not accepting the pay stubs as evidence confirming the work experience. (Plaintiffs' MSJ 23, ECF No. 23.) However-

er, the agency was not arbitrary in determining that the photocopies of paystubs reflecting cash payments in February of 2003 and 2004 do not qualify as "independent objective evidence of the beneficiary's qualifying employment" because the pay stubs only represent two individual months of work and the agency had no way to verify that the payments were actually made for services performed. (AR 6, ECF No. 13.)

Accordingly, the AAO decision to deny Plaintiffs' application, due to lack of proof evidencing Plaintiffs' qualifications for employment was not "arbitrary, capricious" or without observance of procedure required by law. 5 U.S.C. §§ 706(2)(A), (D). Although it could have reached a different conclusion under the facts, the AAO did not abuse its discretion in determining that Estrada failed to meet its burden of establishing that Beneficiary possessed the requisite six months of experience as a Michoacán Specialty Cook at the time of the priority date.

## CONCLUSION

For the reasons stated above, the Court DENIES Plaintiffs' Motion for Summary Judgment and **GRANTS** Defendants' Cross–Motion for Summary Judgment. Accordingly, the Court finds in favor of Defendant. The clerk of the court shall close the file.

**IT IS SO ORDERED.**